## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **GREG PEALS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil No. 4:20-cv-022-KPJ** |
| | § | |
| **QUIKTRIP CORPORATION, d/b/a** | § | |
| **OKLAHOMA QUICKTRIP** | § | |
| **CORPORATION,** *et al.*, | § | |
| | § | |
| **Defendants.** | | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendant QuikTrip Corporation's ("QuikTrip") Motion for Summary Judgment (the "Motion for Summary Judgment") (Dkt. 29), wherein QuikTrip seeks summary judgment as to all three of Plaintiff Greg Peals' ("Plaintiff") causes of action: premises liability, negligence, and gross negligence. Plaintiff filed a response (Dkt. 32), QuikTrip filed a reply (Dkt. 33), and Plaintiff filed a sur-reply (Dkt. 34).

Also pending before the Court is Plaintiff's Motion to Dismiss (the "Motion to Dismiss") (Dkt. 35).

Upon review, the Court finds that QuikTrip's Motion for Summary Judgment (Dkt. 29) is hereby **GRANTED IN PART** and **DENIED IN PART** as follows: Summary judgment is **DENIED** with respect to Plaintiff's premises liability claim. A genuine issue of material fact exists as to whether QuikTrip had actual or constructive knowledge of the hazardous condition. Summary judgment is **GRANTED** with respect to Plaintiff's negligence and gross negligence claims. Plaintiff's Motion to Dismiss (Dkt. 35) is **DENIED**.

# I.  BACKGROUND

## A.  FACTUAL BACKGROUND

In 2018, Plaintiff worked as a commercial driver for AutoZone, for whom he delivered orders to customers. *See* Dkt. 34-1 at 6–7. On January 15, 2018, while working, Plaintiff entered one of QuikTrip's gas stations (the "Store") to use the restroom and buy some food. *See* Dkt. 29-1 at 2; Dkt. 34-1 at 15–16. In the Store's restroom, Plaintiff slipped and fell. *See* Dkt. 32-1 at 2; Dkt. 34-1 at 16. Plaintiff testified he saw no sign or any other display warning of a wet floor, observed no liquid or trash on the floor, and believed the floor looked clean. Dkt. 34-1 at 16. According to Plaintiff, he was the only individual in the Store's restroom at the time of the fall. *Id.* When he fell, Plaintiff perceived the floor "had a strong smell[,] like a cleaning agent had been applied." Dkt. 32-1 at 3. In his deposition, Plaintiff described the floor as follows:

> A. It was just wet. I mean, it was just wet, slippery. It wasn't, like, soaking wet. It was just wet.
>
> . . .
>
> Q. How big of an area?
>
> A. I guess from that sink area over to the urinals.
>
> Q. Approximately, how far is that?
>
> A. I'm going to say it might have been maybe eight feet.
>
> . . .
>
> Q. How do you know it was wet?
>
> A. I slipped, and I seen the floor was wet.
>
> Q. Does that mean standing water?
>
> A. No. It wasn't standing water.
>
> Q. Was there a puddle?
>
> A. No, it wasn't a puddle.

2

Q. Did it appear that something had been poured and was sitting on the ground like you would—

A. It just looked more slick, like—like it was just slick.

Q. Shiny?

A. Yeah.

. . .

Q. Was there any depth to it?

A. No, there wasn't no—if you're saying puddles of water, no.

Q. You don't know where the water came from, right?

A. Correct.

Q. You don't know where the wet—you keep saying it was wet. You don't know how it got wet, right?

A. Correct.

Q. And you don't know how long it had been wet, correct?

A. Correct.

Q. And you don't know the source of what caused it to be wet, correct?

A. Correct.

Q. You don't know if it had been in that wet condition for ten minutes before you went in, correct?

A. Correct.

Dkt. 34-1 at 17–18. Plaintiff further testified he saw no detergent bubbles on the ground, nor did he see any footprints or tracks in the slick area. *Id.* at 18.

Plaintiff testified that after falling, he used the urinal, washed his hands, and left the restroom. *Id.* at 18–19. Upon exiting the Store's restroom, Plaintiff testified he saw a store employee "cleaning the floors of the main part of the store near the cash registers with some type

of floor cleaning machine." Dkt. 32-1 at 3; Dkt. 34-1 at 19. Plaintiff completed a purchase and left the Store. *See* Dkt. 34-1 at 19.

Plaintiff testified when he got up from his fall, he experienced pain in his upper-left ribcage and his tailbone. *Id.* He then spoke to his employer about the incident, who released Plaintiff to go home. *Id.* After getting home, Plaintiff informed his wife about the fall, and the two went back to the Store to report the incident and complete the requisite paperwork. *Id.* at 20. During this second visit to the Store, Plaintiff testified he saw no cleaning equipment, such as mops, brooms, or buckets. *Id.* Plaintiff further testified he and his wife did not visit the bathroom to further investigate the incident. *Id.*

Plaintiff alleges the fall caused him to suffer physical pain, mental anguish, lost earnings, damage to earning capacity, physical impairment, and medical expenses. *See* Dkt. 9 at 5. Shortly after the fall and up until July 16, 2020, Plaintiff has not worked. *See* Dkt. 34-1 at 6.

Plaintiff represents that QuikTrip provided him nine different video feeds, which depict the Store from 10:50 a.m. to 11:20 a.m. on the day of the fall. *See* Dkt. 32-3 at 2–3. QuikTrip submitted two camera stills, which reflect Plaintiff entered the restroom at 11:06:45 a.m. and exited at 11:09:22 a.m. *See* Dkts. 29-1, 29-2. Plaintiff submitted a camera still, in which Plaintiff maintains a custodial staff can be seen in the background cleaning at 11:09 a.m., though no timestamp is discernable from the photo itself. *See* Dkt. 32-3 at 3 (Declaration of Plaintiff's counsel of record); Dkt. 32-6 (camera still).

## B.  PROCEDURAL HISTORY

On December 9, 2019, Plaintiff filed this lawsuit against Defendant in the 158th Judicial District Court of Denton County, Texas. *See* Dkt. 1 at 2; Dkt. 1-2 at 2. On January 9, 2020, Defendant removed the action to this Court, after which Plaintiff filed an Amended Complaint. *See* Dkts. 1, 9. Plaintiff's Amended Complaint asserts four causes of action—premises liability, "cause of action for negligent activity," negligence, and gross negligence (*see* Dkt. 9); however,

the parties' filings have addressed only three causes of action: premises liability, negligence, and gross negligence. *See* Dkts. 29, 32, 33, 34, 42, 43, 48.

On October 20, 2020, QuikTrip filed its Motion for Summary Judgment (Dkt. 29), wherein QuikTrip seeks summary judgment as to Plaintiff's three causes of action. On November 12, 2020, Plaintiff filed a response (Dkt. 32), wherein Plaintiff represented he would dismiss his negligence claim with prejudice and gross negligence claim without prejudice. QuikTrip filed a reply (Dkt. 33), opposing Plaintiff's voluntary dismissal and urging summary judgment as to all claims. Plaintiff filed a sur-reply (Dkt. 34).

On November 30, 2020, Plaintiff filed the Motion to Dismiss (Dkt. 35), wherein Plaintiff argues his gross negligence claim should be dismissed without prejudice. QuikTrip did not file a response.

## II.  LEGAL STANDARD

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999). The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The party moving for summary judgment has the initial burden to prove there is no genuine issue of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). In sustaining this burden, the movant must identify those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996).

In response, the non-movant "may not rest upon mere allegations contained in the pleadings but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255–57). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show there is a genuine issue for trial. *Stults*, 76 F.3d at 656. The citations to evidence must be specific, as the district court is not required to "scour the record" to determine whether the evidence raises a genuine issue of material fact. LOCAL R. CV-56(d). Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial. *Evans v. Texas Dep't of Transp.*, 547 F. Supp. 2d 626, 636 (E.D. Tex. 2007) (citing *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322), *aff'd*, 273 F. App'x 391 (5th Cir. 2008). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322–23.

### III.  ANALYSIS

#### A.  PREMISES LIABILITY

As a shopper in QuikTrip's store, Plaintiff was QuikTrip's invitee. *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983). As such, under Texas premises liability law, QuikTrip owed Plaintiff a duty to exercise reasonable care to protect him against dangerous store conditions either known or discoverable to QuikTrip. *Threlkeld v. Total Petroleum, Inc.*, 211 F.3d 887, 892

(5th Cir. 2000); *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998). However, QuikTrip's duty to Plaintiff did not make it an insurer of Plaintiff's safety. *Gonzalez*, 968 S.W.2d at 936.

Thus, in order to establish a premises liability claim, Plaintiff must prove: (1) QuikTrip had actual or constructive knowledge of some condition on the premises; (2) the condition posed an unreasonable risk of harm; (3) QuikTrip did not exercise reasonable care to reduce or eliminate the risk; and (4) QuikTrip's failure to use such care proximately caused Plaintiff's injuries. *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992) (citing *Corbin*, 648 S.W.2d at 296).

QuikTrip asserts it is entitled to summary judgment because Plaintiff has no evidence of the Store's actual or constructive knowledge of the wet floor at issue. *See* Dkt. 29 at 19–23. With respect to actual knowledge, QuikTrip cites the deposition of Plaintiff, noting Plaintiff has not established QuikTrip's employees ever saw or were told of the wet floor prior to Plaintiff's fall. *See id.* at 20–21. With respect to constructive knowledge, QuikTrip contends Plaintiff "can produce no temporal evidence whatsoever," which is required under Texas law to establish constructive knowledge. *Id.* at 23. QuikTrip further argues Plaintiff "attempt[ed] to 'manufacture' evidence" by producing a "sham affidavit" in response to the Motion for Summary Judgment. Dkt. 33 at 1.

Under Texas law, a premises owner's knowledge of a potentially harmful condition can be established in one of the three following ways: (1) proof that employees caused the harmful condition; (2) proof that employees either saw or were told of the harmful condition prior to the plaintiff's injury therefrom; or (3) proof that the harmful condition was present for so long that it should have been discovered in the exercise of reasonable care. *Threlkeld*, 211 F.3d at 892 (citing *Keetch*, 845 S.W.2d at 264).

Knowledge of the condition by a premises owner may be inferred from the creation of a dangerous condition by the owner or its employees. *See Keetch*, 845 S.W.2d at 265. The fact that

the owner or occupier of a premises created a condition that posed an unreasonable risk of harm may support an inference of knowledge, but the fact finder still must find that the owner or occupier knew or should have known of the condition. *Grayson v. Anselmo*, Case No. 14-06-01073-CV, 2008 WL 660433, at *2 (Tex. App.—Houston [14th Dist.] Mar. 11, 2008, no pet.); *see also Coffee v. F.W. Woolworth Co.*, 536 S.W.2d 539, 542 (Tex. 1976) ("The fact that [the defendant] created the condition was circumstantial evidence of knowledge."). The inference of actual or constructive knowledge is a fact question for the trier of fact: "Making the inference as a matter of law is improper unless knowledge is uncontroverted." *Keetch*, 845 S.W.2d at 266; *see Coffee*, 536 S.W.2d at 542. The Court address actual knowledge first, followed by constructive knowledge.

### 1.  Actual Knowledge

A genuine issue of material fact exists as to whether QuikTrip had actual knowledge of the alleged wet restroom floor. Actual knowledge is established where the defendant either (1) caused the harmful condition or (2) saw or was told of the harmful condition prior to the plaintiff's injury therefrom. *See Threkeld*, 211 F.3d at 892 (citing *Keetch*, 845 S.W.2d at 264).

### a.  The Factual Record

Here, drawing all reasonable inferences in favor of Plaintiff, the Court finds there is a genuine issue as to whether QuikTrip caused the harmful condition. The record reflects Plaintiff perceived the smell of a cleaning agent in the Store's restroom, and, upon exiting the restroom at 11:09:22 a.m., Plaintiff saw a QuikTrip employee with "some type of floor cleaning machine." *See* Dkt. 29-2; Dkt. 32-1 at 3. Plaintiff also submitted a video still at 11:09 a.m., which allegedly depicts a QuikTrip employee cleaning the floors. *See* Dkt. 32-3 at 3; Dkt. 32-6. Drawing the reasonable inference in favor of Plaintiff, the record could establish QuikTrip caused the condition leading to Plaintiff's fall; hence, any such inferences regarding actual knowledge must belong to the trier of fact. *See Jones v. Valero Energy Corp.*, No. 5:08-cv-193-CMC-DF, 2009 WL 3063326, at *3–4 (E.D. Tex. Sept. 21, 2009) (denying summary judgment where the plaintiff testified he

saw no substance on floor prior to falling, but after falling, observed some substance and he "could

smell the odor of diesel fuel"); *see also Keetch*, 845 S.W.2d at 265 (finding it is improper to decide,

as a matter of law, whether a store had actual knowledge where the plaintiff avers the store sprayed

a chemical on the floor and the store denied it). Because there is a genuine dispute as to whether

QuikTrip had actual knowledge of the wet floor, the Court denies QuikTrip summary judgment as

to actual knowledge.

      b.   <u>"Sham Affidavit Doctrine"</u>

QuikTrip objects to Plaintiff's affidavit as a "sham affidavit." *See* Dkt. 33 at 1. Specifically,

QuikTrip argues Plaintiff's deposition testimony conceded the substance on the floor was water,

which directly contradicts his affidavit testimony, wherein Plaintiff testifies he smelled a cleaning

agent after his fall. *See* Dkt. 29 at 20; Dkt. 33 at 1–6. In light of this purported contradiction,

QuikTrip references the "sham affidavit" doctrine and urges the Court to disregard Plaintiff's

affidavit testimony. *See* Dkt. 33. QuikTrip identifies the following deposition testimony,

contending it directly conflicts with Plaintiff's affidavit testimony:

Q. And you don't know the source of what caused it to be wet, correct?

A. Correct.

. . .

Q. You have no evidence that anyone at QuikTrip caused it to be wet, correct?

A. Correct.

. . .

Q. I mean, you don't know how the water—how the floor got wet, correct?

A. Correct.

Dkt. 29-3 at 11–12; Dkt. 33 at 2–4.

"The sham affidavit doctrine prevents a party who has been deposed from introducing an

affidavit that contradicts that person's deposition testimony without explanation because 'a

nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment.'" *Free v. Wal-Mart La., LLC*, 815 F. App'x 765, 766 (5th Cir. 2020) (quoting *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000)). "Under the sham affidavit doctrine, a district court may refuse to consider statements made in an affidavit that are 'so markedly inconsistent' with a prior statement as to 'constitute an obvious sham.'" *Winzer v. Kaufman Cnty.*, 916 F.3d 464, 472 (5th Cir. 2019) (citations omitted). "However, not 'every discrepancy' in an affidavit justifies a district court's refusal to give credence to competent summary judgment evidence." *Id.* Thus, where there is no direct inconsistency and all that exists is a matter of witness credibility, "the district court should not reject the content of an affidavit even if it is at odds with statements made." *Id.*

Upon review of the 107-page transcript of the deposition testimony and the affidavit testimony, the Court does not find a direct contradiction exists. As Plaintiff correctly argues, Plaintiff never conceded the substance on the floor was water. See Dkt. 34 at 4. Plaintiff's answers simply describe the substance as slippery and that the area did not have "standing water." See Dkt. 34-1 at 17–18.

Further, QuikTrip's counsel never asked Plaintiff what smell, if any, Plaintiff perceived in the restroom. *See* Dkt. 34-1. Though Plaintiff testified during the deposition that he did not know the source of the floor's wetness and how the floor became wet, the Court does not find this creates a direct contradiction with Plaintiff's proffered affidavit testimony. Had Plaintiff stated he "knew" QuikTrip's custodial staff caused the floor to be wet, such an answer could have been inferential and speculative, as Plaintiff did not have actual, first-hand knowledge of how the floor became wet. This answer is also consistent with Plaintiff's testimony that he smelled the scent of a cleaning agent, as one could smell cleaning agent after falling and still not know the cause of one's fall or what substance made the floor slick. The question of Plaintiff's credibility as to these assertions is an issue that belongs to the trier of fact. *See Winzer*, 916 F.3d at 472.

Having found no direct contradiction between the deposition and affidavit testimonies, the Court can properly consider Plaintiff's affidavit. *See id.* Drawing all reasonable inferences from Plaintiff's affidavit testimony and other filings in the record creates a genuine issue of material fact as to actual knowledge. The Court denies QuikTrip summary judgment as to this element of premises liability.

### 2. Constructive Knowledge

With respect to constructive knowledge, the Court denies summary judgment. Under Texas law, a plaintiff must offer temporal evidence so that a "factfinder can reasonably assess the opportunity the premises owner had to discover the dangerous condition." *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 816 (Tex. 2002). In *Reece*, the Texas Supreme Court stated:

> What constitutes a reasonable time for a premises owner to discover a dangerous condition will, of course, vary depending upon the facts and circumstances presented. And proximity evidence will often be relevant to the analysis. Thus, **if the dangerous condition is conspicuous** as, for example, a large puddle of dark liquid on a light floor would likely be, then an employee's proximity to the condition might shorten the time in which a jury could find that the premises owner should reasonably have discovered it. Similarly, if an employee was in close proximity to a less conspicuous hazard for a continuous and significant period of time, that too could affect the jury's consideration of whether the premises owner should have become aware of the dangerous condition. But in either case, there must be some proof of how long the hazard was there before liability can be imposed on the premises owner for failing to discover and rectify, or warn of, the dangerous condition. Otherwise, owners would face strict liability for any dangerous condition on their premises, an approach we have clearly rejected.

81 S.W.3d at 816 (emphasis added).

A plaintiff may rely on circumstantial evidence to establish constructive notice, "but [such evidence] must transcend mere suspicion." *Rendon v. Target Store # 2152*, No. 13-13-00510-CV, 2014 WL 2527440, at *4 (Tex. App.—Corpus Christi-Edinburg May 15, 2014, no pet.) (citing *Lozano v. Lozano*, 52 S.W.3d 141, 149 (Tex. 2001)). "When circumstances are consistent with any possibility, and nothing shows that one is more probable than the other, no fact can be inferred."

*Id.* (citation omitted). "Evidence so slight that any inference is purely a guess is no evidence at all." *Id.* (citations omitted).

Further, while it is helpful to have evidence quantifying how long a hazardous condition existed, such evidence is not required if the size of the hazardous condition is large or otherwise obvious. *See Moreno v. Wal-Mart Stores Tex., LLC*, No. H-19-4006, 2020 WL 7261056, at *3 (S.D. Tex. Dec. 9, 2020) (denying summary judgment where the plaintiff offered photograph of a puddle "large and spread out enough so that a question of material fact exist[ed] as to whether it was there for a long enough time period so that Wal-Mart or its employees reasonably should have discovered it" and did not quantify a time); *Thornton v. Racetrac Petroleum, Inc.*, No. 3:13-cv-1658-P, 2014 WL 11460873, at *1–2 (N.D. Tex. July 31, 2014) (denying summary judgment where question of how long it takes oil to stain concrete presented a genuine issue of material fact as to the temporal nature of the hazard and the plaintiff did not quantify a time); *Nguyen v. Target Corp.*, No. 01-15-00789-CV, 2016 WL 3571110, at *4 (Tex. App.—Houston [1st Dist.] June 30, 2016, no pet.) (finding constructive notice can be established without quantifying a time if the dangerous condition is "so large that the proper owner had to have known that it existed").

In his deposition, Plaintiff testified the slick restroom floor stretched from "the sink area over to the urinals," a distance he estimates spanned eight feet. Dkt. 34-1 at 17. This testimony reflects the slick floor covered a relatively large area. This testimony also reflects the slick floor was somewhat conspicuous, as Plaintiff testified he could perceive the slick condition was "wet," "shiny," and extended from the sink to the urinals. *See* Dkt. 34-1 at 17–18; *Moreno*, 2020 WL 7261056, at *3.

The record also reflects Plaintiff smelled a cleaning agent after falling. Dkt. 32-1 at 3. The time it takes for the smell of cleaning fluid to dissipate and lose its pungency after application presents a genuine issue of material fact as to the temporal nature of the hazard. *See Thornton*, 2014 WL 11460873, at *3 ("It may be that oil can stain concrete with sufficient swiftness that the

stain will be insufficient temporal evidence of constructive knowledge. However, [defendant] has failed to meet its burden on this point."). So too with the floor's "wet" and "shiny" qualities—the time it takes for cleaning fluid to lose its luster after application also presents a genuine issue of material fact. *See id.*; Dkt. 34-1 at 18;

Moreover, Plaintiff testified that he personally saw a QuickTrip custodian "with some type of floor cleaning machine" after exiting the restroom. Dkt. 32-1 at 3. Plaintiff also offers a camera still that Plaintiff believes depicts a QuikTrip custodian. *See* Dkt. 32-3 at 3; Dkt. 32-6. In its reply brief, QuikTrip does not dispute, or otherwise address, Plaintiff's description of the video still. Dkt. 33. These pieces of evidence are germane to the issue of proximity, which the Texas Supreme Court recognized "will often be relevant" to the issue of constructive notice. *Reece*, 81 S.W.3d at 816.

From the record, the Court finds Plaintiff's evidence transcends beyond "mere suspicion." *Rendon*, 2014 WL 2527440, at *4. Drawing all reasonable inferences in favor of Plaintiff, there is a genuine issue as to whether QuikTrip should have known that a relatively large, shiny, somewhat conspicuous slick floor effusing the smell of cleaning fluid existed in its restroom. Summary judgment is denied as to constructive notice.

### B. NEGLIGENCE

In QuikTrip's Motion for Summary Judgment, QuikTrip argues Texas law precludes Plaintiff from bringing his negligence claim in conjunction with his premises liability claim. *See* Dkt. 29 at 16–18. In his response, Plaintiff cursorily states he "will dismiss this claim with prejudice," citing no case law, Federal Rule, Local Rule, or Court Order granting such authority. Dkt. 32 at 8. QuikTrip opposes Plaintiff's voluntary dismissal and seeks summary judgment. *See* Dkt. 33 at 7–8. Without reaching the procedural propriety of a voluntary dismissal raised in a response, rather than a motion, the Court addresses QuikTrip's Motion for Summary Judgment with respect to Plaintiff's negligence claim.

"Under Texas law, negligent claims involve 'affirmative, contemporaneous conduct by the owner that caused the injury,' while premises liability claims encompass 'a nonfeasance theory based on the owners failure to take measures to make the property safe.'" *Garcia v. Ross Stores, Inc.*, 896 F. Supp. 2d 575 (S.D. Tex. 2012) (quoting *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010)). "Recovery on a negligent activity claim requires that the plaintiff have been injured by a contemporaneous result of the activity itself rather than by a condition created by the activity." *Id.* (internal quotations and citations omitted). "If the injury was caused by a condition created by the activity, rather than the activity itself, a plaintiff is limited to a premises defect theory of liability." *Id.* (citation omitted).

Here, Plaintiff alleges he was injured as a result of a wet floor, not the concurrent activity of a QuikTrip employer. *See* Dkt. 32-1 at 2; Dkt. 34-1 at 16. In fact, Plaintiff testified he was the only individual in the Store's restroom when he fell. *See* Dkt. 34-1 at 16. Thus, Plaintiff cannot state a claim for negligence. *See Bauer v. Best Buy Store, LP*, No. 1:19-cv-206-KFG-TH, 2020 WL 7053263, at *4 (E.D. Tex. Sept. 16, 2020) (granting summary judgment where the plaintiff alleged she tripped and fell due to a display table and stacked merchandise, but alleged no concurrent activity from any store employee), *report and recommendation adopted*, 2020 WL 6073793 (E.D. Tex. Oct. 14, 2020). The Court grants summary judgment as to Plaintiff's negligence claim.

## C.  GROSS NEGLIGENCE

As with Plaintiff's general negligence claim, QuikTrip urges summary judgment as to Plaintiff's gross negligence claim. *See* Dkt. 33 at 7–8. QuikTrip further argues that, should the Court accept Plaintiff's voluntary dismissal, the dismissal should be with prejudice. *See id.* In Plaintiff's Motion to Dismiss, Plaintiff argues dismissal without prejudice is proper, as dismissal will not result in plain legal prejudice. *See* Dkt. 35 at 3.

### 1. Summary Judgment

To prevail on a gross negligence claim, the plaintiff must prove, with clear and convincing evidence, (1) when viewed objectively from the defendant's standpoint at the time of the event, the act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. *See Glover v. Walmart Stores Tex., LLC*, No. 9:19-cv-58-MJT, 2020 WL 5745811, at *5 (E.D. Tex. Aug. 7, 2020) (citing *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012)).

To establish an extreme degree of risk, a plaintiff must "show that the defendant's conduct created a strong likelihood of serious harm, 'such as death, grievous physical injury, or financial ruin.'" *Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 327 (Tex. 1993) (quoting *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 22 (Tex. 1994)). To establish conscious indifference, the plaintiff must show the defendant "knew about the peril, but its acts or omissions demonstrated it did not care." *Lee Lewis Constr. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001) (citations omitted).

Here, Plaintiff has not offered any evidence to establish conscious indifference on behalf of QuikTrip, let alone evidence sufficient to meet the clear and convincing evidence standard. Plaintiff has not quoted, filed, or otherwise provided the deposition testimony of any QuikTrip employee on the day of the incident. *See Lee Lewis Constr.*, 70 S.W.3d at 785–86 (holding the plaintiff established conscious indifference when the plaintiff offered testimony of an employee, who described standard safety measures, was aware of risks posed by not implementing such safety measures, and, despite knowing this risk, did not implement the measures). At this stage, the record reflects Plaintiff saw a large shiny area, smelled a cleaning agent, and saw a custodian outside the

15

restroom with cleaning equipment. *See* Dkt. 29-2; Dkt. 32-1 at 3; Dkt. 32-3 at 3; Dkt. 32-6. These

pieces of evidence do not establish a QuikTrip employee intentionally ignored "the peril" or "did

not care" about the allegedly hazardous condition. Because Plaintiff did not carry his burden to

"designate specific facts in the record," *Lee Lewis Constr.*, 70 S.W.3d at 785, the Court grants

summary judgment with respect to Plaintiff's gross negligence claim. *Sults*, 76 F.3d at 656.

### 2.  Voluntary Dismissal

Though the Court has found QuikTrip is entitled to summary judgment as to gross

negligence, the Court nevertheless addresses Plaintiff's Motion to Dismiss (Dkt. 35), which seeks

voluntary dismissal of his gross negligence claim without prejudice.

The Fifth Circuit has explained that, "as a general rule, motions for voluntary dismissal

should be freely granted unless the non-moving party will suffer some plain legal prejudice other

than the mere prospect of a second lawsuit." *Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 317

(5th Cir. 2002). The mere fact that a plaintiff "may gain a tactical advantage by dismissing its suit

without prejudice and refiling in another forum is not sufficient legal prejudice." *Bechuck v. Home

Depot U.S.A., Inc.*, 814 F.3d 287, 299 (5th Cir. 2016) (internal quotation omitted). "The purpose

of Rule 41(a)(2) is primarily to prevent voluntary dismissals which unfairly affect the other side,

and to permit the imposition of curative conditions." 9 CHARLES A. WRIGHT & ARTHUR R. MILLER,

FEDERAL PRACTICE AND PROCEDURE § 2364 (4th ed. October 2020 update) (internal quotation

omitted). Absent a showing of plain legal prejudice or other "evidence of abuse by the movant,"

the court should generally grant a Rule 41(a)(2) motion for voluntary dismissal. *Elbaor*, 279 F.3d

at 317.

Courts have considered a number of factors in determining "plain legal prejudice." In

*Elbaor*, the Fifth Circuit noted, but did not adopt, the Eighth Circuit's examination of factors

related to the issue of prejudice to the non-movant:

> We consider the following factors when determining whether a district court abused its discretion in denying a Rule 41(a)(2) motion: (1) the defendant's effort and the expense involved in preparing for trial, (2) excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, (3) insufficient explanation of the need to take a dismissal, and (4) the fact that a motion for summary judgment has been filed by the defendant.

*Elbaor*, 279 F.3d at 317 n.3 (quoting *Witzman v. Gross,* 148 F.3d 988, 992 (8th Cir. 1998)). In *Manshack v. Southwestern Elec. Power Co.*, the Fifth Circuit highlighted that "[t]he fact that additional expense will be incurred in relitigating issues in another forum will not generally support a finding of 'plain legal prejudice.'" 915 F.2d 172, 174 (5th Cir. 1990).

The Fifth Circuit has held that it is important, in assessing prejudice, to consider the stage at which the motion to dismiss is asserted. *See Hartford Accident & Indem. Co. v. Costa Lines Cargo Servs., Inc.*, 903 F.2d 352, 360 (5th Cir. 1990). Therefore, "[w]here the plaintiff does not seek dismissal until a late stage and the defendants have exerted significant time and effort, the district court may, in its discretion, refuse to grant a voluntary dismissal." *Id.*

Here, the Court finds QuikTrip would experience plain legal prejudice and, as such, accepting Plaintiff's voluntary dismissal without prejudice is not warranted. Plaintiff filed the Motion to Dismiss on November 30, 2020. *See* Dkt. 35. Though QuikTrip did not file a response, pursuant to the Local Rules, the Motion to Dismiss became ripe for adjudication on December 14, 2020. *See* Dkt. 35; LOCAL RULE CV-7(e). Upon becoming ripe, the discovery period had already closed, QuikTrip's Motion for Summary Judgment had already been fully briefed, and the case had been pending for more than a year. *See* Dkts. 1, 24, 27, 29, 32, 33, 34, 35. On these facts, granting Plaintiff's Motion to Dismiss would result in plain legal prejudice to QuikTrip. *See Kramer v. Butler*, 845 F.2d 1291, 1294–95 (5th Cir. 1988) (affirming denial of voluntary motion to dismiss without prejudice where case had been pending for one year and full evidentiary hearing was conducted), *cert. denied*, 488 U.S. 865 (1988); *Pace v. Southern Express Co.*, 409 F.2d 331, 334 (7th Cir 1969) (same, but where case had been pending for more than one and a half years,

17

with considerable discovery undertaken, and the defendant had briefed motion for summary judgment); *Roor Int'l v. Stinky's Smoke Shop, LLC*, No. 4:18-cv-735-KPJ, 2020 WL 7863857, at *6–8 (E.D. Tex. Dec. 30, 2020) (denying voluntary motion to dismiss without prejudice where case had been pending for more than two years and the defendant had expended great costs for pretrial litigation and in preparing for trial).

## IV.   CONCLUSION

For the foregoing reasons, the Court finds Defendants' Motion for Summary Judgment (Dkt. 29) is hereby **GRANTED IN PART** and **DENIED IN PART** as follows: Summary judgment is **DENIED** with respect to Plaintiff's premises liability claim. A genuine issue of material fact exists as to whether QuikTrip had actual or constructive knowledge of the hazardous condition. Summary judgment is **GRANTED** with respect to Plaintiff's negligence and gross negligence claims. Plaintiff's Motion to Dismiss (Dkt. 35) is **DENIED**.

**So ORDERED and SIGNED this 29th day of January, 2021.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE

18