IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| GREG PEALS, | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:20-cv-22-KPJ |
| | § | |
| QUIKTRIP CORPORATION d/b/a | § | |
| OKLAHOMA QUICKTRIP | § | |
| CORPORATION *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Greg Peals' ("Plaintiff") Motion for Sanctions Based on Defendants' Spoliation of Evidence (the "Motion") (Dkt. 59), wherein Plaintiff requests the Court to submit an adverse instruction to the jury. On April 21, 2021, Defendant QuikTrip Corporation ("QuikTrip") filed a response (Dkt. 60), to which Plaintiff filed a reply (Dkt. 78). On May 18, 2021, the Court held a final pretrial conference (the "Hearing"), during which it heard oral argument from the parties on the Motion. *See* Dkt. 92. Having considered the briefings, applicable authority, and oral arguments, the Court finds the Motion (Dkt. 59) is hereby **DENIED**.

### I.  BACKGROUND

This is a slip-and-fall lawsuit. In 2018, Plaintiff worked as a commercial driver for AutoZone. *See* Dkt. 34-1 at 6–7. On January 15, 2018, while working, Plaintiff entered one of QuikTrip's gas stations (the "Store") in Little Elm, Texas, to use the restroom and buy food. *See* Dkt. 29-1 at 1; Dkt. 34-1 at 15–16. While in the Store's restroom, Plaintiff slipped and fell. *See* Dkt. 32-1 at 2; Dkt. 34-1 at 16. During his deposition, Plaintiff testified that he saw no sign or any other display warning of a wet floor, observed no liquid or trash on the floor, and believed the

1

floor appeared clean. Dkt. 34-1 at 16. According to Plaintiff, he was the only individual in the Store's restroom at the time of his fall. *Id.* When he fell, Plaintiff perceived the floor "had a strong smell[,] like a cleaning agent had been applied." Dkt. 32-1 at 3.

Plaintiff testified that after falling, he used the urinal, washed his hands, and left the Store's restroom. Dkt. 34-1 at 18–19. Upon exiting the restroom, Plaintiff testified he saw a Store employee "cleaning the floors of the main part of the [S]tore near the cash registers with some type of floor cleaning machine." Dkt. 32-1 at 3; Dkt. 34-1 at 19. Plaintiff completed a purchase and left the Store. *See* Dkt. 34-1 at 19. AutoZone granted Plaintiff leave to go home for the day, and Plaintiff and his wife returned to the Store to complete an Incident Report that same day. *See id.* at 19–20.

The Incident Report states a wet floor sign was placed in the Store's restroom, and the sign was located at the "far end next to the stall." Def.'s Proposed Ex. 1. In a section labeled "Customer Version," the Incident Report states:

> Enter restroom on my way into stall slipped left side catching [myself] with left arm something popped sharp pain some neck pain left side.

*Id.* (errors original).

In a section labeled "Employee Version of What Happened," the Incident Report states:

> [A]fter watching [the Digital Video Recording] i watch the customer come in, headed to the restroom after a few moments customer comes out and bought an apple and did not mention anything to my assistant, during that time i was talking to a customer that i ran into while doing trash, and my other employee was working in the FSC.

*Id.* (errors original). The Incident Report's accident description states, "Left shoulder and neck pain." *Id.*

On January 26, 2018, Plaintiff's counsel provided a letter to QuikTrip (the "Preservation Letter"), which states in part:

2

> You are notified and requested to preserve all evidence, including but not limited to:
>
> 1. All photographs and video of the incident, location, parties, involved, or physical evidence;
>
> 2. The actual audio tape recording (and any transcript related to) of any recorded statement made by my client, any witness, your employees;
>
> [listing additional demands to preserve evidence]
>
> Although this case is not in litigation[,] I do not want to be faced with a situation where six months down the road your client claimed that they destroyed any video evidence, daily paperwork, maintenance logs, etc., under the explanation that it is not their normal practice to keep such information. Please confirm in writing that you have agreed to preserve all information as listed above.

Dkt. 59-3 (emphasis removed).

That same day, QuikTrip remitted a letter to Plaintiff, wherein QuikTrip acknowledged receipt of the Preservation Letter. *See* Dkt. 59-4. Pursuant to the Preservation Letter's request to preserve "[a]ll . . . video of the incident, location, parties involved, or physical evidence. . . ," QuikTrip preserved Store video footage covering the time span of 10:50 a.m. to 11:20 a.m., which captures the fifteen minutes preceding Plaintiff's entry into the Store, Plaintiff's entry into the Store's restroom at 11:06:45 a.m., Plaintiff's exit from the Store's restroom at 11:09:22 a.m., Plaintiff's purchase, and Plaintiff's departure from the Store. *See* Dkt. 59-6; Dkt. 60 at 3; Dkt. 60-3; Dkt. 60-4. QuikTrip represents any other footage was erased, as QuikTrip's retention policy deletes video footage after thirty days unless preserved. *See* Dkt. 92.

On December 9, 2019, nearly two years after sending QuikTrip the Preservation Letter, Plaintiff initiated this lawsuit in state court. *See* Dkt. 1-3. Plaintiff's Original Petition alleges Plaintiff slipped and fell in the Store's restroom but makes no allegation regarding cleaning fluids. *See id.* On January 9, 2019, QuikTrip removed the action to this Court. *See* Dkts. 1, 1-3. The parties subsequently engaged in discovery. *See* Dkts. 1-2, 60-5.

On April 20, 2020, as part of its initial disclosures, QuikTrip produced the thirty minutes of video footage preserved. *See* Dkt. 59-6; Dkt. 60 at 3. On July 16, 2020, QuikTrip deposed Plaintiff, and, according to QuikTrip, the deposition was the first time QuikTrip learned cleaning fluids may have caused Plaintiff's fall. *See* Dkt. 34-1; Dkt. Dkt. 92. On September 22, 2020, Plaintiff served QuikTrip a supplemental request for production, wherein Plaintiff requested that QuikTrip "[p]roduce all Video recordings, documents and photographs of the restroom entry area **6 hours prior** to the incident subject to this incident." Dkt. 59-5 at 5 (emphasis added). QuikTrip informed Plaintiff it did not have the six hours of footage requested, explaining it preserved only thirty minutes of footage, as it "considered that span to be reasonable in duration and preserved it. Other than the produced video, no other video or photographs responsive to this Request is in [QuikTrip's] possession as [QuikTrip] in good faith preserved that portion of the CCTV reasonably foreseeably relevant to the claim." Dkt. 59-6 at 5.

On April 7, 2021, seven months after Plaintiff served his supplemental request for production and approximately one month and a half before trial, Plaintiff filed the pending Motion (Dkt. 59), wherein Plaintiff requests the following adverse jury instruction be submitted to the jury:

> Defendant QuikTrip Corporation failed to preserve and destroyed store video of the restroom entrance for a five and one-half hour period prior to 10:50 a.m. on January 15, 2018. You may consider that this video would have been unfavorable to Defendant . . . .

Dkt. 59 at 4.

In the Motion, Plaintiff asserts "[s]tore video of the restroom entrance prior to 10:50 a.m. is highly relevant because it may well have shown a store employee going into the restroom with a floor cleaning machine and floor cleaning solution." *Id.* at 2. QuikTrip filed a response (Dkt. 60), to which Plaintiff filed a reply (Dkt. 78). On May 18, 2021, during this matter's final pretrial conference, the Court heard oral argument from the parties. *See* Dkt. 92.

## II. **DISCUSSION**

"Spoliation of evidence is the destruction or the significant and meaningful alteration of evidence." *Crain v. City of Selma*, 852 F.3d 634, 639 (5th Cir. 2020). "The authority to sanction litigants for spoliation arises jointly under the Federal Rules of Civil Procedure and the court's own inherent powers." *LaFrentz v. Lockheed Martin Corp.*, No. 4:21-cv-4229, 2021 WL 1215847, at *2 (S.D. Tex. Mar. 31, 2021) (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)). "Under the doctrine of spoliation, a jury may draw an adverse inference that a party who intentionally destroys important evidence in bad faith did so because the contents of those documents were unfavorable to that party." *Id.* (citing *Crain*, 852 F.3d at 639).

At issue is (a) whether federal or state law applies, (b) whether the Court should draw from the Federal Rules or its inherent powers to invoke its power to sanction, and (c) whether Plaintiff is entitled to any adverse jury instruction.

### A. WHETHER FEDERAL OR STATE LAW APPLIES

The parties dispute whether federal or state law applies. *See* Dkts. 59, 60, 78. Plaintiff's Motion relies on *Brookshire Bros. v. Aldridge*, 438 S.W.3d 9 (Tex. 2014), wherein the Texas Supreme Court discussed spoliation under Texas' discovery rules. *See* Dkt. 59 at 3. QuikTrip's response states Plaintiff's Motion cites the wrong legal standard, arguing federal law governs the Motion, and under federal law, a spoliation sanction is unwarranted. *See* Dkt. 60. Plaintiff's reply brief continues to urge that state law guides the Court's analysis, citing two Fifth Circuit opinions in which the Fifth Circuit applied Louisiana state law. *See* Dkt. 78 at 2. Having reviewed the applicable authorities, the Court finds QuikTrip is correct: Federal law applies to the pending Motion, not state law.

There is a difference between a spoliation *claim*, which is a separate cause of action sounding in tort, and entering an adverse spoliation *instruction*, which is a discovery sanction imposed by the Court. State law governs the former, and federal law governs the latter. "[U]nlike many other jurisdictions, Texas does not recognize spoliation as an independent tort cause of action." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 762 F. Supp. 2d 942, 963 n.10 (quoting *Trevino v. Ortega*, 969 S.W.2d 950, 952–53 (Tex. 1998)). Louisiana state law does. *See Pham v. Contico Int'l, Inc.*, 759 So.2d 880, 882 (La. Ct. App. 2000).

In the two Fifth Circuit cases cited by Plaintiff—*Herster v. Board of Supervisors of La. State Univ.*, 887 F.3d 177 (5th Cir. 2018) and *Burge v. St. Tammany Par.*, 336 F.3d 363 (5th Cir. 2003)—the plaintiffs asserted a spoliation cause of action in their complaints, and the Fifth Circuit applied Louisiana law to evaluate such claims. *See Herster*, 887 F.3d at 189 ("The Louisiana tort of spoliation of evidence is a cause of action for an intentional destruction of evidence to deprive an opposing party of its use."); *Burge*, 336 F.3d at 374 (stating the same).

Here, Plaintiff's Motion seeks a spoliation instruction as a discovery sanction. *See* Dkt. 59. Accordingly, federal law applies. *See King v. Illinois Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003) (holding federal law governs motion for sanctions seeking spoliation instruction); *accord Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (joining the Fourth, Second, and Ninth Circuits in holding that federal law governs sanctions for spoliated evidence).

### B. WHETHER THE COURT SHOULD DRAW FROM THE FEDERAL RULES OR ITS INHERENT POWERS

"Allegations of spoliation, including the destruction of evidence in pending or reasonably foreseeable litigation, are addressed in federal courts through the inherent power to regulate the litigation process if the conduct occurs before a case is filed or if, for another reason, there is no statute or rule that adequately addresses the conduct." *Rimkus Consulting Grp., Inc. v. Cammarata*,

688 F. Supp. 2d 598, 611 (S.D. Tex. 2010) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991); *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1408 (5th Cir. 1993)). If a federal statute or rule can adequately sanction the conduct, the court should apply the statute or rule, rather than apply the "more flexible or expansive" inherent powers of the court. *Id.* If the court relies on its inherent powers, exercising such powers must be done "narrowly," as "inherent powers are shielded from direct democratic controls." *Newby v. Enron Corp.*, 302 F.3d 295, 302 (5th Cir. 2002); *Natural Gas Pipeline*, 2 F.3d at 1409.

Federal Rule of Civil Procedure 37(e), which governs a party's duty to preserve electronically stored information ("ESI"), provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>     (A) presume that the lost information was unfavorable to that party;
>     (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>     (C) dismiss the action or enter a default judgment.

FED. R. CIV. P. 37(e).

As numerous courts have found, video footage from security cameras constitutes ESI, and the availability of sanctions for losing such footage is evaluated under Rule 37(e). *See, e.g.*, *Bursztein v. Best Buy Stores, LP*, No. 20-cv-76, 2021 WL 1961645, at *7 (S.D.N.Y. May 17, 2021); *Guarisco v. Boh Bros. Constr. Co.*, 421 F. Supp. 3d 367, 380–81 (E.D. La. 2019); *Estate of Esquivel v. Brownsville Indep. Sch. Dist.*, No. 1:16-cv-40, 2018 WL 7050211, at *3–4 (S.D. Tex.

7

Nov. 20, 2018); *Wooden v. Barringer*, No. 3:16-cv-446, 2017 WL 5140518, at *4 (N.D. Fla. Nov. 6, 2017); *Bouchard v. U.S. Tennis Ass'n*, No. 15 Civ. 5920, 2017 WL 3868801, at *1 (S.D.N.Y. Sept. 5, 2017).

Because Rule 37(e) adequately addresses the lost footage at issue, the Court will not draw from its inherent powers. *See Rimkus*, 688 F. Supp. 2d at 611; *see also* FED. R. CIV. P. 37(e) Advisory Committee Notes to 2015 Amendment (noting the 2015 amendment "forecloses reliance on inherent authority or state law to determine when certain measures should be used").

### C. WHETHER RULE 37(e) PERMITS AN ADVERSE JURY INSTRUCTION

"Rule 37(e)'s plain language dictates that four predicate elements must exist before a federal district court may sanction a party for lost ESI." *Grant v. Gusman*, No. 17-2797, 2020 WL 1864857, at *8 (E.D. La. Apr. 13, 2020). "The four predicate elements are: (1) the ESI should have been preserved; (2) loss of that ESI; (3) the lost ESI resulted from a party's failure to take reasonable steps to preserve it; and (4) the lost ESI cannot be restored or replaced through additional discovery." *Id.* After the four predicate elements are established, the court may consider whether sanctions are warranted under either Rule 37(e)(1) or Rule 37(e)(2). *See id.*; FED. R. CIV. P. 37(e).

Rule 37(e)(1) allows the Court to craft sanctions to cure prejudice experienced by the innocent party. *See* FED. R. CIV. P. 37(e)(1). Rule 37(e)(2) allows the Court to impose the severest of sanctions against the destroying party: presume the lost evidence was unfavorable to the destroying party, instruct the jury that it may or must presume the information was unfavorable, dismiss the action, or enter default judgment. *See* FED. R. CIV. P. 37(e)(2). To impose severe sanctions under Rule 37(e)(2), the Court must find the destroying party "acted with the intent to deprive." *Id.*

8

Plaintiff's Motion seeks an adverse jury instruction allowing the jury "to consider" that the video may have had unfavorable evidence. *See* Dkt. 59 at 4. During the Hearing, Plaintiff emphasized that the requested instruction was reasonable, as the instruction would make the inference of unfavorable footage permissive, rather than mandatory. *See* Dkt. 92. Nonetheless, the jury instruction Plaintiff seeks falls under Rule 37(e)(2)'s purview, and Plaintiff's request requires the Court to find QuikTrip intended to deprive Plaintiff of the lost footage. *See* FED. R. CIV. P. 37(e)(2). Explained below, sanctions are not warranted.

1. **Rule 37(e)'s Predicate Elements**

Here, only two of the four predicate elements have been met. The parties do not dispute that additional footage desired has been lost and that the footage cannot be replaced. *See* Dkts. 92, 95. Nevertheless, the Court does not find QuikTrip should have preserved the additional footage, nor does the Court find the loss resulted from QuikTrip's failure to take reasonable steps.

   a. *Whether Additional Footage Should Have Been Preserved*

A party has a duty to preserve evidence "when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015). Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action. *See Edwards v. Junior State of Am. Found.*, No. 4:19-cv-140-SDJ, 2021 WL 1600282, at *7 (E.D. Tex. Apr. 23, 2021) (citing FED. R. EVID. 401). "Parties need only take reasonable care in, but not extraordinary measures, to preserve evidence." *Allstate Tex. Lloyd's v. McKinney*, 964 F. Supp. 2d 678, 684 (S.D. Tex. 2013); *see also* FED. R. CIV. P. 37(e) Advisory Committee's Notes to 2015 Amendment. "A corporation under a duty to preserve is not required to keep every shred of paper, every e-mail or electronic document, and every backup tape. . . . In

essence, the duty to preserve evidence extends to those employees likely to have relevant information—the key players in the case, and applies to unique, relevant evidence that might be useful to the adversary." *Alabama Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 740–41 (N.D. Ala. 2017) (citation omitted).

Here, QuikTrip's duty to preserve video footage arose eleven days after Plaintiff alleges he fell, when Plaintiff's counsel sent QuikTrip the Preservation Letter. *See* Dkt. 9; Dkt. 59-3 at 3. The Preservation Letter instructed QuikTrip to preserve "all photographs and video of the incident," but did not state how much footage to preserve or reference cleaning fluids as the cause of Plaintiff's alleged fall. *See* Dkt. 59-3 at 3. The Incident Report merely states, "Enter restroom on my way into stall slipped left side catching [myself] with left arm something popped sharp pain some neck pain left side." Def.'s Proposed Ex. 1. On December 9, 2019, Plaintiff filed his Original Petition in Texas state court, which, again, did not aver that cleaning fluids caused Plaintiff's fall. *See* Dkt. 1-3.

Drawing on the limited information in the Preservation Letter and the Incident Report, QuikTrip preserved thirty minutes of footage, which includes fifteen minutes of footage preceding Plaintiff's entry into the Store. Only on July 16, 2020, approximately two and a half years after receiving the Preservation Letter, did QuikTrip first learn residual cleaning fluids may have caused Plaintiff's alleged fall. *See* Dkt. 34-1; Dkt. 59-3; Dkt. 92. QuikTrip learned this information during Plaintiff's deposition, which took place well after QuikTrip deleted the additional footage pursuant to its thirty-day retention policy. *See* Dkt. 34-1; Dkt. 92. On September 22, 2020, Plaintiff requested six hours of footage through a supplemental request for production, as Plaintiff believed additional footage could have shown QuikTrip's custodial staff entered the restroom with floor cleaning equipment. *See* Dkt. 59 at 4; Dkt. 59-5 at 5.

From this record, the Court finds Plaintiff did not provide QuikTrip with adequate notice that additional footage was relevant to the litigation, or that QuikTrip should have known additional footage may have been relevant. Plaintiff's Preservation Letter relied on vague, boilerplate language to demand the preservation of "all" photographs, rather than a specific quantum of footage. *See* Dkt. 59-3 at 3. Additionally, Plaintiff's Preservation Letter did not allude to the cause of Plaintiff's injury. Plaintiff's Incident Report was similarly indistinct. *See* Def.'s Proposed Ex. 1.

On these particular facts, QuikTrip could not have reasonably known that it should have preserved additional footage or known that its custodial staff would be a "key player" in this lawsuit. *See Alabama Aircraft*, 319 F.R.D. at 741; *see also Belvins v. San Bernardino Cnty. Sheriff's Dep't*, No. 5:19-cv-1247, 2021 WL 1375155, at *4 (C.D. Cal. Mar. 7, 2021) ("[P]laintiff points to no evidence to reflect that defendants, or any other officials at WVDC, were aware of a need to preserve additional video beyond the period immediately before, during, and after the altercation between plaintiff and his cellmate in their cell on May 18, 2019."). QuikTrip used the limited information available to preserve the footage it understood at the time as relevant: footage capturing Plaintiff's entry into the Store, his entry into the restroom, and his departure. *See Air Prods. & Chem., Inc. v. Wiesemann*, No. 14-1425-SLR, 2017 WL 758417, at *2 (D. Del. Feb. 27, 2017) (no sanctions where party wiped laptops of former employees and initial disclosures only named one employee); *Marten Transpt., Ltd. v. Plattform Advert., Inc.* No. 14-cv-2464-JWL-TJJ, 2016 WL 492743, at *4–5 (D. Kan. Feb. 8, 2016) (no sanctions where party deleted internet browsing history because it "did not know or have reason to know" the ESI would be relevant at the time of deletion); *Terral v. Ducote*, No. 15-366, 2016 WL 5017328, at *2–3 (W.D. La. Sept. 19, 2016) (no sanctions where party recorded over video footage as part of its routine procedure,

and party only received notice of potential litigation after the desired footage was erased). Under Rule 37(e), QuikTrip did not have a duty to preserve additional footage.

### b. Whether the Loss of Footage Resulted from QuikTrip's Failure to Take Reasonable Steps to Preserve It

For similar reasons, the loss of footage was not a result of QuikTrip's failure to take reasonable steps to preserve it. "Due to the ever-increasing volume of electronically stored information and the multitude of devices that generate such information, perfection in preserving all relevant electronically stored information is often impossible. . . . This rule recognizes that 'reasonable steps' to preserve suffice; it does not call for perfection." FED. R. CIV. P. 37(e) Advisory Committee's Notes to 2015 Amendment; *see also Marten Transpt.*, 2016 WL 492743, at *4. QuikTrip had limited information regarding Plaintiff's claim, and it took reasonable steps to preserve the video footage it believed was relevant based on the information it had at the time regarding the incident.

### 2. Sanctions Under Rule 37(e)(2)

Even if the four predicate elements were met, the Court does not discern any intent to deprive Plaintiff of evidence. "The Fifth Circuit permits an adverse inference against the destroyer of evidence only upon a showing of 'bad faith' or 'conduct.'" *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 2019 WL 4738915, at *4 (W.D. Tex. Sept. 27, 2019) (quoting *Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2005)). "Evidence of destruction as part of a regular course of conduct is insufficient to support a finding of intent to deprive, as required by Rule 37(e)(2)." *Flores v. AT&T Corp.*, No. EP-17-CV-318-DB, 2018 WL 6588586, at *9 (W.D. Tex. Nov. 8, 2018); *see also Bry v. City of Frontenac*, No. 4:14-cv-1501 RLW, 2015 WL 9275661, at *11 n.7 (E.D. Miss. Dec. 18, 2015) (no intent to deprive where party deleted camera footage as a result of standard procedures).

Here, there is no indication that QuikTrip destroyed the footage in bad faith. Based on the Incident Report, Notice, and Original Petition, the only information QuikTrip received about Plaintiff's fall was that it occurred in the restroom. *See* Dkt. 1-3; Dkt. 59-3; Def.'s Proposed Ex. 1. These documents never intimate cleaning fluids caused Plaintiff's injury. As a result, QuikTrip preserved the amount of footage it deemed reasonable: fifteen minutes of events preceding Plaintiff's entry into the Store, Plaintiff's entry into and exit from the restroom, and Plaintiff's departure from the Store. The remainder was deleted pursuant to QuikTrip's retention policy for security camera footage. *See* Dkt. 92. The Court does not find QuikTrip deleted the footage for the purpose of hiding adverse evidence. *See Bryant v. Wal-Mart La., LLC*, 729 F. App'x 369, 370 (5th Cir. 2018) (no abuse of discretion where the district court found deleting footage as part of standardized retention policy did not show bad faith).

### 3. Sanctions Under Rule 37(e)(1)

Similarly, the Court does not find sanctions under Rule 37(e)(1) are warranted. "[T]he more important evidence is to the resolution of a case, the more severe the prejudice is to a party when the evidence is not preserved." *Edwards v. Junior State of Am. Found.*, 2021 WL 1600282, at *10 (E.D. Tex. Apr. 23, 2021). Ordinarily, the moving party "has the burden of establishing the elements of a spoliation claim by a preponderance of the evidence." *Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 580 (S.D.N.Y. 2017). However, as amended, Rule 37(e)(1) "does not place a burden of proving or disproving prejudice on one party or the other, but rather leaves it within the Court's discretion to determine how best to assess prejudice in particular cases." *Creative Movement & Dance, Inc. v. Pure Performance, LLC*, No. 1:16-cv-3285-MHC, 2017 WL 4998649, at *14 (N.D. Ga. July 24, 2017) (cleaned up). "One way to defeat a claim of prejudice is

to show that the information is available through other means." *Security Alarm Fin. Enters., LP v. Alarm Prot. Tech., LLC*, No. 3:13-cv-102-SLG, 2016 WL 7115911, at *7 (D. Alaska Dec. 6, 2016).

To be sure, from Plaintiff's perspective, more video footage may be desirable. Footage confirming the exact time a QuikTrip employee entered the Store's restroom and exited could be favorable to Plaintiff. However, other pieces of evidence can provide equivalent information. QuikTrip employees will provide live testimony during the jury trial. *See* Dkts. 51, 61, 92. QuikTrip's safety and policy procedures will also be offered to the jury. *See* Dkt. 92 (admitting QuikTrip's safety procedures and store operation procedures into evidence). Certainly, Plaintiff may view this evidence as inferior to the video footage desired. However, this is a relatively straightforward slip-and-fall case, and the exhibits and witnesses available makes Plaintiff well-equipped to present his case before the jury without the video footage. The Court finds the prejudice experienced by Plaintiff is small, and with a plentitude of witnesses and exhibits available for admission into evidence, the Court need not impose any curative sanctions. Sanctions under Rule 37(e)(1) are not warranted.

### III. CONCLUSION

For the foregoing reasons, the Court finds the Motion (Dkt. 59) is hereby **DENIED**.

**So ORDERED and SIGNED this 21st day of May, 2021.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE